## SPALDING COUNTY *v.* CHAMBERLIN & COMPANY.

1. All the material terms of a contract entered into in behalf of a county by the county authorities having jurisdiction over county matters must be in writing and entered on their minutes; and where a petition, seeking to recover on a contract for services rendered, alleged, that the county authorities made a contract with the plaintiff, whereby he was employed to prepare plans and specifications for and to superintend the erection of a court-house, at a compensation of five per cent. of the contract price of the building, and entered on their minutes an order stating that he was employed to render such services, without stating what

compensation was to be paid therefor, the petition was subject to general demurrer.

2. The contract referred to in the preceding headnote is entire; and the only service alleged to have been rendered was that the plaintiff prepared plans and specifications for the court-house; and no excuse is alleged for not performing the other service of superintending its erection. On this account, if for no other reason, the petition is subject to general demurrer.

3. Before making a contract for the erection of a court-house it is not necessary that the county authorities should levy a tax or issue bonds for the purpose of raising the money with which to pay for it, or that they should have a vote of the people upon any question connected therewith, provided they do not contract for a sum to be paid exceeding the available funds on hand and the amount of taxes levied or that may be lawfully levied for the year for that purpose.

(*a*) The authority to build a court-house includes authority to employ an architect to prepare plans and specifications therefor and to superintend its erection.

Argued February 15,—Decided May 14, 1908.

Complaint. Before Judge Reagan. Spalding superior court. January 25, 1907.

W. Chamberlin & Company brought suit against the County of Spalding, making substantially the following allegations in their petition. They are architects, and, as such, were employed on October 11, 1905, by the county, through its board of commissioners of roads and revenues, to prepare plans and specifications for and to superintend the erection of a court-house for the county. The board contemplated the erection of a court-house to cost $50,000. Such employment was entered on the minutes of the board, as follows: "Griffin, Ga., Oct. 11th, 1905. A special called meeting of the Board of County Commissioners, to consider the erection of a court-house and the selection of an architect in connection therewith. Whereas it is now necessary to provide a new court-house building for Spalding county, in the City of Griffin, Ga., therefore be it resolved, Messrs. W. Chamberlin & Company, architects of Birmingham, Ala., be retained and appointed architects to prepare plans and specifications and superintend the erection of the proposed building, and are hereby employed and directed to design the building and prepare plans and specifications for the same." The 4th paragraph of the plaintiffs' petition, which follows the foregoing allegations thereof, is as follows: "Petitioners show that they accepted said employment, it being under-

stood and agreed that they were to receive for their services five per cent. of the contract price of the said court-house, this being reasonable compensation and the usual fee for the services that were to be rendered by your petitioners." On October 30, 1905, the board approved and accepted in writing the design for the court-house, prepared by the plaintiffs by reason of such employment and direction of the board, signed their approval on the design, and entered the following resolution on the minutes: "Oct. 30th, 1905. After the adjournment of the advisory committee, the County Commissioners convened and directed Messrs. Chamberlin & Co., architects, to proceed with the plans, details, and specifications of the new court-house and deliver the same on the 16th of November for approval before advertising bids." In accordance with the directions contained in this resolution, they drew and prepared plans, details, and specifications of a court-house to cost $50,000, and had them at the office of the board on the 16th of November. The plaintiffs allege, that $1,750 is due them for their services performed in designing and drawing the plans and specifications of the building, this sum being reasonable compensation and the customary and usual fee for said services, and that, "at the time of making said contract of employment, Spalding County had ample funds in the treasury to pay petitioners for drawing and designing said plans and specifications for said court-house, raised for the purpose of providing for same."

A general demurrer to the petition was overruled, and the defendant excepted.

*Lloyd Cleveland*, for plaintiff in error.

*J. D. Boyd* and *T. E. Patterson*, contra.

HOLDEN, J. (After stating the facts.) 1. The plaintiffs allege that they were employed by the county, through its commissioners, to prepare the plans and specifications for and to superintend the erection of a court-house building, and a proper construction of the resolutions of the board is that they were so employed. There is, however, nothing in these resolutions stating, nor from which it can be inferred, what the plaintiffs were to receive for their services to be rendered in pursuance of such employment. The plaintiffs allege that they accepted said employment, it being understood that they were to receive for their services five per cent. of the contract price of the building. A proper construction of

the allegations of the petition is that it was a part of the contract of employment that the plaintiffs were to receive five per cent. of the contract price of the court-house, for their entire services in preparing plans and specifications and superintending the building of the court-house, a part of which services they rendered. If it be true, as contended by the plaintiffs, that the order of the board, under which they rendered services in pursuance of their employment, makes a written contract between the plaintiffs and the county, entered on the minutes, were the provisions of the Political Code, §343, met, when, as appears from the plaintiffs' petition, what appears on the minutes is only a part of the contract? That section provides: "All contracts entered into by the ordinary with other persons in behalf of the county must be in writing and entered on their minutes." One of the main objects of the law is to prevent disputes as to the terms of the contract to which the county is a party, by having the contract in writing and entered on the minutes; and, as stated by Justice Lewis in *Milburn* v. *Glynn County,* 109 *Ga.* 475 (34 S. E. 848), "The object of the law requiring an entry of such contracts upon the minutes is to give information, easily accessible to the public, as to the character of contracts being made by county authorities." The taxpayers of the county are entitled to know, not only for what purpose their money is being disbursed, but the amount thereof that is to be expended for a given purpose, if any amount is agreed upon; and this statute intended to provide a source from which such information could be reliably obtained,—that is, through the medium of the contract itself spread upon the public records of the county.

It appears from the plaintiffs' petition that it was part of the contract that they were to receive for their services five per cent. of the contract price of the building; and this material portion of the contract is not in writing and on the minutes. To permit a county to be held liable on a contract when a material part of it is in parol, and only part of it in writing and on the minutes, would defeat the object of the statute. To meet the requirements of the statute above referred to, all the material portions of the contract actually made should be in writing and on the minutes; and if the county employs any one to perform services and a price is agreed upon, this should appear in the contract on the minutes.

If the compensation is agreed upon, but omitted from the record on the minutes, the contract is not in writing and on the minutes, but only a portion of it. The provisions of the Political Code, §343, supra, are similar to some of the provisions of the statute of frauds; and in the case of *Turner* v. *Lorillard Co.,* 100 *Ga.* 645 (28 S. E. 383, 62 Am. St. R. 345), it was held: "A contract for the purchase of goods 'to the amount of fifty dollars or more,' though in writing, is nevertheless within the statute of frauds when it appears that the parties intended to contract specifically as to price, but the instrument neither designated what it was to be, nor otherwise stated the actual agreement of the parties with reference to price in such manner as to render its amount properly ascertainable by the aid of extrinsic evidence." Upon this subject see also *Stewart* v. *Cook,* 118 *Ga.* 541 (45 S. E. 398) ; *Borum* v. *Swift,* 125 *Ga.* 198 (53 S. E. 608). It appears from the allegations of the plaintiffs' petition that it was agreed between them and the county commissioners that the plaintiffs were to receive for their services five per cent. of the contract price of the courthouse, but this fact does not appear in the resolution of the board on the minutes; and as this material part of the contract actually agreed upon does not appear on the minutes, an essential part of the contract was in parol, and only a part thereof in writing; which does not meet the requirements of the statute, the main object of which is that all material portions of the contract agreed upon shall be in writing and appear on the minutes. The plaintiffs allege that the five per cent. of the contract price of the courthouse, agreed upon, was "reasonable compensation and the usual fee for the services that were to be rendered by" them. The proper construction of this allegation is that the word "usual" is used in support of the immediately preceding allegation that such compensation is reasonable because it is the "usual" compensation for such services.

2. The plaintiffs in this case brought suit for $1,750, which was three and one half per cent. of $50,000, and alleged that this was reasonable compensation and the customary and usual fee for the services which they rendered in designing and drawing plans and specifications for a building to cost $50,000, which was the amount contemplated by the board for the building to cost. They alleged that they had these plans and specifications in the

office of the board, for delivery to them, on the 16th of November, in accordance with the terms of their employment and the resolution instructing them to proceed. There is no allegation by the plaintiffs that they did any more than this.; and no reason is offered why they did not superintend the building of the court-house. If this was an entire contract, there could be no recovery on it for part performance, unless some good excuse be given for the failure to wholly perform. If this is a valid contract in behalf of the county, the plaintiffs were employed to prepare plans and specifications and to superintend the erection of the building; and it was not a divisible, but an entire contract. It is not a contract upon which the plaintiffs, after performing part of it, can recover for such services, without showing some good excuse for their failure to perform the other services called for in the contract. They allege that five per cent. of the contract price was agreed upon for the services to be rendered, and these services embraced the superintending of the building of the court-house, as well as the preparation of plans and specifications therefor. There were not two separate and distinct contracts, one providing for the preparation of plans and specifications, and the other for superintending the building, but there was one entire contract, covering all of these services, according to what appears on the minutes, and there was one sum to be paid for the entire service, according to the allegations of the petition. *Southern Fire Ins. Co.* v. *Knight,* 111 *Ga.* 622 (36 S E. 821, 52 L. R. A. 70, 78 Am. St. R. 216) ; *Harden* v. *Lang,* 110 *Ga.* 392 (36 S. E. 100) ; *Broxton* v. *Nelson,* 103 *Ga.* 327, 330 (30 S. E. 38, 68 Am. St. R. 97). Whether a contract is entire or severable is to be determined by the intention of the parties thereto, evidenced by their contract. If a contract is upon one consideration, this fact is of great importance in determining whether the parties intended the contract to be entire or severable. This contract employing the plaintiffs to prepare plans and specifications for and superintend the erection of the building is based, according to the allegations of the petition, upon one consideration,—to wit, five per cent. of the contract price of the building. There is nothing in the contract to indicate that the county was to pay for the services rendered in preparing plans and specifications whether the service contracted for, of superintending the building, was rendered or not. The al-

legation that three and one half per cent. of the contract price was reasonable compensation, and was the customary and usual fee for preparing plans and specifications, may be true, and a recovery for such services might be had if there were no other services to be rendered, or if there was a good excuse for a failure to perform other services which were to be rendered, or if the contract providing for such services were severable; but it can not be held, on account of such allegations, that upon an entire contract, like the one here made, payment was to be made for services rendered, when other services called for were not rendered and no excuse was offered for the failure to render them. Such allegations mean that for the services mentioned the amount named was reasonable compensation and the customary and usual fee, but it can not be held, by reason of such allegations, that such charges are recoverable when the services were rendered under an entire contract, and other services provided for therein were not rendered and no good excuse was offered for not rendering them. It does not appear from the petition whether or not any court-house was ever built. There is no allegation that the plaintiffs superintended the building of the court-house, or made any offer or exhibited any willingness to do so, or had any excuse for failing to do so. In the case of *Ala. Gold Life Ins. Co.* v. *Garmany*, 74 *Ga.* 51, it was ruled that "A party to an entire contract who has partly performed it and subsequently abandons the further performance according to its stipulations, voluntarily and without fault on the part of the other party or his consent thereto, can recover nothing for such part performance." This being an entire contract for drawing plans and specifications for and superintending the erection of the building, and the plaintiffs only alleging that they drew the plans and specifications, without alleging any excuse for the failure to superintend the erection of the building, there could be no recovery; and the petition was subject to a general demurrer.

3. One ground of the demurrer was, that the commissioners were not authorized to make any agreement or contract with the plaintiffs of the kind set forth in the petition, and were not authorized to make any debts of the nature and amount described in the petition, unless the matter was first submitted to the people and ratified by two-thirds vote thereof; and that the commissioners were not authorized to employ architects for the purpose of mak-

ing plans and specifications for a court-house, until they were in a position, under the law, to erect a court-house, by making a provision therefor either by levy of a tax or by a bond issue. There is no merit in these grounds of demurrer. The authority to build a court-house includes authority to employ an architect to prepare plans and specifications therefor and to superintend the erection thereof. Before making a contract for the erection of a court-house, it is not necessary that the county authorities should levy a tax or issue bonds for the purpose of raising the money with which to pay for the same, or that they should have a vote of the people upon any question connected therewith, provided they do not contract for a sum to be paid exceeding the available funds on hand and the amount of taxes levied or that may be lawfully levied for the year for that purpose. *Lewis* v. *Lofley,* 92 *Ga.* 804 (19 S. E. 57) ; *Anderson* v. *Newton,* 123 *Ga.* 513 (51 S. E. 508) ; *Manly Building Co.* v. *Newton,* 114 *Ga.* 245 (40 S. E. 274). If a court-house is to be built according to plans and specifications prepared by an architect, the services of the architect, of course, would be needed, and should be engaged, before the contract is made. *Judgment reversed. All the Justices concur.*